UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RAYVON SHEPHERD,

        Plaintiff,

    -against-

DETECTIVE ROBERT MAYER, SERGEANT
PATRICK MCGRATH, and DETECTIVE
DAVID GRIECO

        Defendants.
------------------------------------------------------------x

13 CV 6142 (NG) (PK)

OPINION AND ORDER

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JAN 31 2018 ★

BROOKLYN OFFICE

**GERSHON, United States District Judge:**

Plaintiff Rayvon Shepherd brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants—Detective Robert Mayer, Sergeant Patrick McGrath, and Detective David Grieco of the New York City Police Department—violated his civil rights when they arrested and prosecuted him.

Following a pre-motion conference at which plaintiff expressly dropped three of the six claims alleged in his Amended Complaint, three claims remain: false arrest, malicious prosecution, and denial of the right to a fair trial based on fabrication of evidence. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff now moves for partial summary judgment as to false arrest,[1] and defendants move for summary judgment as to all claims.

---

[1] In his motion papers, plaintiff also purports to move for summary judgment as to unlawful seizure (or as he refers to it in the Amended Complaint, deprivation of rights under the Fourteenth Amendment). However, plaintiff unequivocally withdrew this claim at the pre-motion conference and cannot now move as to a previously withdrawn claim. Transcript of Pre-Motion Conference (Dkt. No. 85) at 3:22–4:15; 18:7–10.

1

For the reasons set forth below, plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is denied as to the claims for false arrest and denial of the right to fair trial and granted as to malicious prosecution.

I. **Facts**

The parties agree on some basic facts, but offer sharply different versions of fundamental facts surrounding the events of January 3, 2013, the date of plaintiff's arrest. Below, I indicate when facts are disputed.

On the evening of January 3, 2013, defendants arrived at 368 New Jersey Avenue after receiving information from a field intelligence officer about possible drugs and guns in the building's second floor apartment. Three sixty-eight New Jersey Avenue is a three-story apartment building, with one apartment on each floor, plus a basement. It is undisputed that defendants entered the apartment building and saw plaintiff and two other individuals in the building. However, the circumstances under which defendants saw plaintiff in the building are disputed.

Defendants claim that, upon their entrance into the building and ascension of the staircase to the second floor, they saw plaintiff and two other individuals—non-parties Andre Edwards and Shamel Turner—leave the second floor apartment and climb the stairs to the third floor. According to Detective Mayer, he then knocked on the door of the second floor apartment, and the door was opened by Troy Garraway, the superintendent of the apartment building. Detective Mayer asked Mr. Garraway if anyone else was inside the apartment, and Mr. Garraway said no. During this exchange with Mr. Garraway, Detective Mayer saw a cell phone and some loose marijuana on a table that was visible from the threshold of the second floor apartment door. After seeing the cell phone and loose marijuana, plaintiff and the non-parties, who had previously been seen leaving the second floor apartment and walking up the stairs to the third floor, were told to wait on the

2

stairs. Detective Mayer then asked Mr. Garraway's permission to enter the apartment to check if anyone else was in there, and Mr. Garraway consented.

According to plaintiff, however, he was never in the second floor apartment. Rather, plaintiff claims that he was at 368 New Jersey Avenue to visit family in the building's third floor apartment. After visiting with his family for between thirty minutes and an hour, plaintiff, Mr. Edwards, and Mr. Turner left the third floor apartment, and, as they were leaving, heard the police enter the building.[2] At the time, plaintiff was standing on a "flat walkway area" outside the door of the third floor apartment. Exhibit B to Defs' Decl. 105:4–6. Plaintiff heard the defendants ask Mr. Garraway who had the keys for the second floor apartment, and then heard defendants start to "tussl[e] [Mr. Garraway] for the keys and force[] him to open it." Exhibit B to Defs' Decl. at 110:4-7. An officer then came to the third floor and searched plaintiff, Mr. Turner, and Mr. Edwards. According to plaintiff, he was then handcuffed and forcibly dragged down to the second floor.

The remaining facts are undisputed. Upon his entrance into the second floor apartment, Detective Mayer found a firearm on top of the kitchenette-area cabinets and marijuana in the kitchenette-area cabinets. Two cell phones, two cell phone batteries, and cell phone accessories were also recovered from the second floor apartment.

Plaintiff was arrested and taken to the precinct. He was held in custody for 22 hours until his arraignment. Plaintiff was charged with criminal possession of a weapon in the second, third, and fourth degrees; criminal possession of marijuana in the fourth degree; and unlawful possession of marijuana. He posted bail, and the case was presented to the grand jury, which declined to indict

---

[2] There is a discrepancy between plaintiff and the non-parties as to whether they entered the third floor apartment. Mr. Edwards and Mr. Turner testified that the police arrived before they were ever able to enter the third floor apartment.

3

him. The case was dismissed on January 30, 2013. The building superintendent, Mr. Garraway, later took responsibility for the contraband found in the apartment.

Finally, it is undisputed that, while in police custody, plaintiff was told the police had his cell phone, and plaintiff asked that his cell phone not be turned over to his girlfriend because it had other women's numbers in it. During his deposition, plaintiff accounted for his phone's presence in the second floor apartment by explaining that, on his way into the building, he asked Mr. Garraway, with whom he was familiar from past visits to the building, to charge his phone. When he was told the police had his phone, he assumed that Mr. Garraway had charged it in the second floor apartment.

## II. Summary Judgment Standard

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Ind. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). However, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. False Arrest

Plaintiff and defendants both move for summary judgment as to false arrest. A § 1983 claim for false arrest derives from the Fourth Amendment right to remain free from unreasonable seizures, a right which includes the right to remain free from arrest absent probable cause. *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). The analysis of a § 1983 claim for false arrest is "substantially the same" as the analysis for such a claim under New York State law. It requires a plaintiff to show that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (internal quotation marks omitted) (citing *Broughton v. State*, 37 N.Y.2d 451 (1975)). Probable cause is a complete defense to a claim for false arrest. *Jaegly*, 439 F.3d at 152.

There is no dispute that plaintiff can establish the first three elements. The parties' disagreement turns on the fourth element: probable cause. Specifically, the parties dispute core facts that are determinative of whether defendants had probable cause to arrest plaintiff based on his presence in the second floor apartment and consequent relationship to drugs and a firearm recovered there. Plaintiff claims he was never in the second floor apartment, but rather that defendants dragged him from the third floor to the second floor apartment. Plaintiff accounts for

5

the recovery of his cell phone in the second floor apartment by explaining that he asked Mr. Garraway, the building superintendent, to charge his phone, and Mr. Garraway charged it in the second floor apartment. In contrast, defendants testified that they saw plaintiff leave the second floor apartment where contraband was discovered a short time later.

Defendants rely on *Jeffreys v. City of New York* to argue that plaintiff's version of events should not be credited. In *Jeffreys*, the Second Circuit held that the district court did not err in granting summary judgment where it (1) found nothing in the record to support plaintiff's allegation other than his own "contradictory and incomplete testimony," and (2) determined that no reasonable person could believe the plaintiff. 426 F.3d 549, 555 (2d Cir. 2005). Defendants argue that *Jeffreys* applies in this case because plaintiff's testimony, especially with regard to giving Mr. Garraway his phone, is "incredibl[e]" and that plaintiff's testimony is disconnected from other evidence—including the testimony of his own non-party witnesses, Mr. Turner and Mr. Edwards. Def. Memo of Law at 10–11.

None of the proffered discrepancies are sufficient to invoke *Jeffreys*. *Jeffreys* applies in "rare circumstance[s]" where "no reasonable person could believe [the plaintiff]." 426 F.3d at 554–55. Here, the most significant part of plaintiff's testimony—that he was never in the second floor apartment and was ordered into the apartment by defendants—is corroborated by both Mr. Turner and Mr. Edwards. Plaintiff's version of events is thus not sufficiently "disconnected" from other evidence for me to conclude that *no* rational juror would credit it. Whether the discrepancies in plaintiff's evidence amount to contradictions that adversely affect plaintiff's credibility is a matter for the jury.

Because I find that *Jeffreys* does not apply, there is a fundamental dispute of fact as to whether plaintiff was in the second floor apartment, and consequently, whether there was probable

6

cause for his arrest. Defendants' motion for summary judgment is thus denied. Because there are issues of material fact related to the finding of probable cause, plaintiff's motion is likewise denied.

## IV. Malicious Prosecution

Defendants also move for summary judgment as to plaintiff's malicious prosecution claim. To prevail on a claim for malicious prosecution, a plaintiff must demonstrate that: (1) the defendant initiated or continued a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) there was an absence of probable cause for the proceeding; (4) the defendant was motivated by actual malice; and (5) there was a post-arraignment deprivation of liberty. *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

"The existence of probable cause is a complete defense to a claim of malicious prosecution." *Delamota v. City of New York*, 683 Fed. Appx. 65, 66 (2d Cir. 2017). But the existence of probable cause is measured "as of the time the judicial proceeding is commenced (*e.g.*, the time of the arraignment), not the time of the preceding warrantless arrest." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000); *Davis v. City of New York*, 373 F.Supp.2d 322, 333 (S.D.N.Y. 2005). Information obtained after the arrest, but before the commencement of proceedings, is thus relevant to the determination of probable cause for a malicious prosecution claim. *Mejia*, 119 F. Supp. 2d at 254.

Plaintiff was charged in a Criminal Court Complaint with criminal possession of a weapon in the second, third, and fourth degrees; criminal possession of marijuana in the fourth degree; and unlawful possession of marijuana. Crucial to the malicious prosecution claim is plaintiff's admission while in police custody that his cell phone was in the second floor apartment. Detective Mayer testified that, while "in the cells," plaintiff asked that his cell phone not be turned over to his girlfriend. Exhibit C to Defs' Decl. at 57:13–22. Plaintiff himself testified at his deposition that

he gave his cell phone to the building superintendent to charge and, when the police told him they had his phone, he assumed the superintendent charged it in the second floor apartment. That plaintiff offered an innocent explanation for his phone's presence in the second floor apartment—that he gave his cell phone to Mr. Garraway to charge—is inconsequential. Innocent explanations, even those that are consistent with facts alleged, do not negate probable cause. *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

Given the officers' knowledge that plaintiff's cell phone was in the second floor apartment, and the fact that contraband was visible in a common area of the apartment, I find there was probable cause to commence judicial proceedings against plaintiff. Defendants' summary judgment motion as to malicious prosecution is GRANTED.

## V.    Denial of the Right to Fair Trial

Finally, defendants move for summary judgment on plaintiff's claim that he was denied the right to a fair trial based on fabrication of evidence. "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997). A plaintiff need not be tried or convicted to assert a fair trial claim, as the constitutional violation occurs when the false information is transmitted to prosecutors. *Lanorith v. Truscelli*, 2017 WL 3634600, at *11 (E.D.N.Y. Aug. 22, 2017); *Ricciuti*, 124 F.3d at 127, 130 (denying summary judgment on a fair trial claim where all criminal charges were dismissed pre-trial). Further, probable cause is not a defense to a fair trial claim. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278 (2d Cir. 2016) ("Because probable cause is no defense to a denial of the right to a fair trial claim, fair trial

claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims."). Thus, although the malicious prosecution claim is dismissed because probable cause for the prosecution bars that claim, the fabrication of evidence claim survives.

Defendants' argument that plaintiff has failed to identify fabricated evidence is meritless. It is clear that plaintiff claims that defendants fabricated evidence about seeing him leave the second floor apartment before they arrested him. Since there is a factual dispute about this evidence, I did not rely on it in deciding the malicious prosecution claim, but it properly forms the basis for the fair trial claim. *Garnett*, 838 F.3d at 268, 274–280.

The only remaining issue is whether the allegedly fabricated evidence led plaintiff to suffer a deprivation of life, liberty, or property. *Id.* at 279. Here, plaintiff has proffered sufficient evidence to show a jury that "at least some portion of the deprivation of his liberty," *Garnett*, 838 F.3d at 277, was the proximate result of that evidence. After the initiation of the prosecution by the filing of a criminal complaint, plaintiff was arraigned before a judge and bail was set and posted. The case was then presented to a grand jury, which did not indict, and the case was dismissed. Although plaintiff had posted bail, only after the case was dismissed was plaintiff released from judicial restraint. As the Court in *Garnett* noted, in rejecting the argument that a privileged arrest barred a fair trial claim, "an arrest in itself may involve only a limited deprivation of liberty." *Id.* at 277.

> The setting of bail, which may make the difference between freedom and confinement pending trial, and the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action, may depend on the prosecutor's and magistrate's assessments of the strength of the case, which in turn may be critically influenced by fabricated evidence. Thus, a further deprivation of liberty can result from the fabrication even if the initial arrest is lawful.

*Id. See Ganek v. Leibowitz*, 874 F.3d 73 (2d Cir. 2017) (noting that, in *Garnett*, the fabrication allegedly informed post-arrest charging and bail determinations). The same is true here where the initiation of the criminal case has been found lawful. The jury could well find that the officers'

allegedly false statements influenced the prosecutors in their request for bail and in their decision to seek an indictment. In deciding to go forward, evidence that the officers had seen plaintiff leaving the apartment in which they had found drugs and a firearm would likely be influential.

### III. Conclusion

For the reasons set forth above, plaintiff's summary judgment motion as to false arrest is DENIED. Defendants' summary judgment motion as to the false arrest and fair trial claims is DENIED, but GRANTED as to the malicious prosecution claim. That claim is dismissed.

To the extent defendants seek a limitation of damages on the false arrest claim to the point in time when probable cause arose, such issues will be addressed during trial preparation. The parties are instructed to file a joint pretrial order by March 5, 2018 in accordance with this court's individual motion practices.[3]

**SO ORDERED.**

/s/ Nina Gershon

**NINA GERSHON**
**United States District Judge**

Dated: January 31, 2018
Brooklyn, New York

---

[3] At the pre-motion conference in anticipation of these motions, plaintiff's counsel was directed to file a letter identifying whether any claims would be dropped against any of the defendants. Transcript of Pre-Motion Conference (Dkt. No. 85) at 21:10–22. No such letter was filed. Plaintiff's counsel is directed to file this letter with respect to the false arrest and fair trial claims by February 16, 2018.